IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Farshid Djahandideh,<br><br>  Petitioner,<br><br>v.<br><br>N. Martinez, et al.,<br><br>  Respondents. | No. CV-25-03337-PHX-SPL (CDB)<br><br><br>**ORDER** |

On September 11, 2025, Petitioner filed a pro se habeas corpus petition under 28 U.S.C. § 2241, and a motion to appoint counsel. By Order dated October 24, 2025, the Court denied the motion to appoint counsel, and directed Respondents to answer the Petition. On November 29, 2025, counsel with the Federal Public Defenders Office filed a Motion for Appointment of Counsel. By Order dated December 4, 2025, the Court granted the Motion, and gave counsel an opportunity to file an amended petition. On December 7, 2025, Petitioner filed the operative amended habeas corpus petition under 28 U.S.C. § 2241 seeking release from immigration detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), a Motion for Discovery, and a Motion for Preliminary Injunction. (Docs. 15, 17, 18). By Order dated December 8, 2025, the Court ordered Respondents to answer the Amended Petition and respond to the injunctive motion. (Doc. 20). Both the Petition and injunctive motion are now fully briefed. For the reasons that follow, the court will grant the Petition and order that Petitioner be immediately released from custody.

. . . .

## I. Background

Petitioner is a native of Iran who entered the United States as a refugee in 1998. (Doc. 25-1 ¶ 4). After a pair of state criminal convictions, removal proceedings were initiated against Petitioner, and he was taken into ICE custody on September 19, 2006. (*Id.* ¶ 17). On January 16, 2007, an immigration judge (IJ) ordered Petitioner removed to Iran, or, in the alternative, to Germany or the Netherlands. (*Id.* ¶ 20). Petitioner waived appeal, and the order became final that same day. (*Id.*). Respondents were unable to effect Petitioner's removal, however, and he was released from custody on an order of supervision on May 25, 2007. (*Id.* ¶ 24). After additional state criminal convictions, Petitioner was re-detained by ICE in 2009, 2010, 2012, and 2015, but each time he was subsequently released on an order of supervision. (*Id.* ¶¶ 33, 27, 37, 41, 48, 54). Petitioner was most recently taken into ICE custody on April 2, 2025. (*Id.* ¶ 64). On May 8, 2025, local ICE sent a travel document request to ICE headquarters in Washington, D.C. (*Id.* ¶ 67). On November 17, 2025, Petitioner "spoke with an Iranian consular official." (*Id.* ¶ 68). Petitioner attests that this official informed him that Iran would not issue travel documents for him without an original Iranian birth certificate or passport, neither of which Petitioner possesses. (Doc. 26-1). As of the date of this Order, Petitioner remains in ICE custody.

## II. Legal Standard

Petitioner's continued detention is governed by 8 U.S.C. § 1231 and *Zadvydas v. Davis*, 533 U.S. 678 (2001). Under § 1231(a)(1), the Government has 90 days in which to remove an alien once a removal order becomes final. Detention during this removal period is mandatory. 8 U.S.C. § 1231(a)(2). If the Government is unable to effect removal within the 90-day removal period, however, continued detention of aliens such as Petitioner becomes discretionary. 8 U.S.C. § 1231(a)(6). That discretion, however, is not unfettered, and indefinite detention is not permitted. *Zadvydas*, 533 U.S. at 689 (8 U.S.C. § 1231(a)(6) "does not permit indefinite detention."). This is not to say that every alien like Petitioner must be released once the 90-day removal period has expired. 533 U.S. at 701. Rather,

the Supreme Court in *Zadvydas* recognized an implicit post-§ 1231(a)(2) period in which continued detention is "presumptively reasonable" and does not violate the Fifth Amendment. *Id.* The *Zadvydas* Court concluded that this "presumptively reasonable" period extends for no more than six months once an order of removal becomes final (including the 90-day mandatory detention period under § 1231(a)(2)). *Id.* Thereafter, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If, after considering the evidence, the court finds that "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699.

### III. Discussion

Due to the numerous prior instances in which he has been detained in ICE custody after his removal order became final, Petitioner's present detention was already beyond the presumptively reasonable *Zadvydas* period at the time he was arrested on April 2, 2025. As such, to obtain relief Petitioner must first provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and, if he does so, Respondents "must respond with evidence sufficient to rebut that showing." 533 U.S. at 701.

Petitioner's removal orders direct that he be removed to Iran, or, in the alternative, to Germany or the Netherlands. (Doc. 25-1 ¶ 20). As to Germany and the Netherlands, it does not appear that Respondents have made any effort to effectuate Petitioner's removal to those countries. Indeed, the record indicates that ICE had not even contacted the governments of those countries regarding Petitioner since 2007. (*See* Doc. 25-1 ¶¶ 21-22). As such, there is good reason to believe that removal to those countries is not significantly likely to occur in the reasonably foreseeable future because there is no evidence to support that Respondents have made any effort to do so in nearly 20 years.

As to Iran, Petitioner asserts that his removal to Iran is not possible because he does not have documents sufficient to satisfy the Iranian government that he is an Iranian citizen

(*i.e.* an original birth certificate or passport). While Respondents contest that the passage of time alone is not sufficient to establish the there is no significant likelihood of removal in the reasonably foreseeable future, and that only three months have elapsed since Petitioner was interviewed by a representative of Iran (*see* Doc. 25 at 4-5),[1] this misses the larger context of Petitioner's removal proceedings. Petitioner was ordered removed nearly 20 years ago, and in all that time and despite repeated efforts, Respondents have been unable to effectuate that removal. Petitioner avows—without evidence to the contrary from Respondents—that the government of Iran will not issue travel documents for him without an original birth certificate or passport, neither of which he possesses. (Doc. 31-1). Respondents have not presented any evidence to refute this avowal, nor is there any evidence to support that Respondents are undertaking efforts to obtain an original birth certificate or passport for Petitioner, or evidence to support that the government of Iran has reversed what appears to be a position of refusing to accept Petitioner for nearly 20 years. Accordingly, the Court finds that Petitioner has shown "good reason" to believe that his removal to Iran is not significantly likely to occur in the reasonably foreseeable future. The burden thus shifts to Respondents to rebut that showing with sufficient evidence. 533 U.S. at 701.

---

[1] *Compare Fahim v. Ashcroft*, 227 F.Supp.2d 1359, 1365–68 (N.D.Ga. 2002) (mere passage of time insufficient to meet alien's burden of proof), *with Seretse–Khama v. Ashcroft*, 215 F.Supp.2d 37, 48–54 (D.D.C. 2002) (continued detention for over three years, coupled with eight-month delay since INS last contacted destination country, suffices to meet alien's burden); *Lema v. U.S. I.N.S.*, 214 F.Supp.2d 1116, 1118 (W.D. Wash 2002), *aff'd on other grounds*, 341 F.3d 853 (9th Cir.2003) (where destination country's lack of response to request for travel documents is combined with INS inability to explain silence and absence of any indication that situation may change, continued detention would be unreasonable but, where destination country's failure to respond suggests nothing more than "bureaucratic inertia," removal remains "foreseeable"); *see also Kacanic v. Elwood*, 2002 WL 31520362 (E.D.Pa. 2002) (passage of one year, coupled with inaction of foreign embassy and INS admission that efforts to obtain travel documents have been "fruitless," suffices to meet alien's burden); *Khan v. Fasano*, 194 F.Supp.2d 1134, 1136–37 (S.D.Cal. 2001) (where alien has been in post-removal order custody for ten months, and meeting is scheduled with destination country to discuss request for travel documents, delay alone is not sufficient to meet alien's burden; however, alien granted leave to refile petition in six months' time if his removal has not then been effectuated); *Okwilagwe v. INS*, 2002 WL 356758 (N.D. Texas March 1, 2002) (passage of eleven months without action by destination country sufficient to meet alien's burden, even where destination country orally promised travel documents "in a few days," but failed to provide them over period of two months).

The only evidence Respondents provide is a Declaration from Deportation Officer (DO) Miguel Martinez. (Doc. 25-1). However, the only information DO Cabrera provides about current efforts to effectuate Petitioner's removal is that on May 8, 2025, local ICE sent a travel document request to ICE headquarters in Washington, D.C., and that on November 17, 2025, Petitioner spoke with an Iranian consular official. (*Id.* ¶¶ 67-68). DO Martinez does not identify any other efforts to remove Petitioner.

This evidence is insufficient to rebut Petitioner's showing. As an initial matter, it does not appear that DO Martinez has personal knowledge as to any of the asserted facts in his Declaration; notably, DO Martinez does not even attest that his Declaration is made based on his personal knowledge. Rather, DO Martinez states that his declaration is "based on [his] review of [Petitioner's] file maintained by DHS." (*Id.* at ¶ 2). At best, DO Martinez has personal knowledge as to the contents of whatever "file" he reviewed, but is not qualified to attest that the events described therein actually occurred or are accurately reflected.

Moreover, DO Martinez's Declaration is insufficient to demonstrate that Petitioner's removal is significantly likely to occur in the reasonably foreseeable future. While Respondents characterize their efforts to remove Petitioner as including having "requested travel documents from Iran for Petitioner on May 8, 2025" (Doc. 25 at 4), this is not supported by DO Martinez's Declaration. Rather, DO Martinez states that on that date, local ICE requested travel documents from "***ICE Headquarters . . . in Washington, D.C.***." There is no evidence that Respondents have made any request for travel documents "from Iran." Indeed, there is no evidence that Respondent shave made any requests related to Iran at all. DO Martinez's Declaration states only that local ICE "sent a [travel document] request to" ICE headquarters; he does not identify which country that request was purportedly related to. While there is no dispute that Petitioner met with an Iranian consulate official in November 2025, the unrebutted record before the Court is that this official informed Petitioner that Iran would not issue travel documents for him because he does not have an original Iranian birth certificate and passport. *See Eshaghian v. Howard*,

CV 2:25-04141-PHX-DWL (ASB) (D. Ariz. Jan. 8, 2026) ("Petitioner has come forward with unrebutted evidence that an Iranian consular representative recently told him that Iran will not issue a travel document to him.  In light of that statement, it would be absurd (as Respondents argue) to view the consular interview as somehow undermining rather than supporting Petitioner's *Zadvydas* claim.") (internal citation omitted).  As such, there is no evidence to support that there is a significant likelihood that Petitioner will be removed to Iran—or any other country—in the reasonably foreseeable future.

The Supreme Court held in *Zadvydas* that as the period of detention grows, "what counts as the 'reasonably foreseeable future' would have to shrink." 533 U.S. at 701.  As noted, Petitioner has now been detained well beyond the presumptively reasonable period identified in *Zadvydas*, and having provided "good reason" to support that his removal to Iran or any other country is not significantly likely to occur in the reasonably foreseeable future, the burden shifts to Respondents to rebut that showing with sufficient evidence. *Id*. Respondents have failed to do so. Respondents have had nearly 20 years to effect Petitioner's removal but have been unable to do so despite repeated efforts, and no evidence has been provided to support that removal to Iran, or a third country, is significantly likely to occur in the reasonably foreseeable future.  Accordingly, the Court finds that Petitioner's continued detention is in violation of the Fifth Amendment, and will thus grant the Amended Petition.

**IT IS ORDERED:**

(1) Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 15) is **granted**.

(2) Respondents must **IMMEDIATELY RELEASE** Petitioner from custody.

(3) No more than **48 HOURS** from the time of this Order, Respondents must file a notice of compliance.

(4) Petitioner's Motion for Preliminary Injunction (Doc. 17) and Motion for Discovery (Doc. 18) are **denied as moot**.

. . . .

(5) The Clerk of Court must enter judgment accordingly and close this case.

Dated this 26th day of January, 2026.

                                Honorable Steven P. Logan
                                United States District Judge